# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED NURSES ASSOCIATION OF CALIFORNIA/UNION OF HEALTHCARE PROFESSIONALS; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 1322; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 1029; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 572; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 415; WISCONSIN FEDERATION OF NURSES AND HEALTH PROFESSIONALS, LOCAL 5000, AFT, AFL-CIO; INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS LOCAL 1998, | CASE NO.  1:25-cv-<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Plaintiffs*, | |
| v. | |
| U.S. DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A. COLLINS, in his official capacity as Secretary of the U.S. Department of Veterans Affairs; DONALD J. TRUMP, in his official capacity as President of the United States, | |
| *Defendants*. | |

## INTRODUCTION

1.      Plaintiffs are labor organizations who collectively represent thousands of federal

employees dedicated to serving this nation and its people. In 1978, based on its express finding

that "labor organizations and collective bargaining in the civil service are in the public interest,"

Congress enacted the Federal Service Labor-Management Relations Statute, which established a

comprehensive labor-management relations framework governing the federal workforce. 5

U.S.C. § 7101 *et seq.* ("Chapter 71"). For decades, consistent with this statutory framework,

Plaintiffs' members have served their country while exercising their rights to join a labor union

and collectively bargain over their working conditions.

2.      But this year, Defendants have sought to exploit a narrow exception in federal

labor law to nullify these statutory rights and put an end to collective bargaining for the majority

of federal employees across the government. This lawsuit seeks to remedy unlawful actions by

Defendants that have resulted in the elimination of statutory labor law protections and collective

bargaining rights for Plaintiffs and their federal employee members.

3.      These attempts to dismantle the federal collective bargaining framework have

harmed Plaintiffs and the employees they represent. Plaintiffs represent approximately 2,800

workers at the Department of Veterans Affairs ("VA"), serving veterans and their families in

positions including Registered Nurses, housekeepers, maintenance workers, and cemetery

workers.

4.      On March 27, 2025, President Trump issued Executive Order 14251 (the

"Exclusion Order"), which purported to apply the national security exemption contained in 5

U.S.C. § 7103(b) to exclude hundreds-of-thousands of employees at a wide swath of federal

agencies from the protections of federal labor law. The VA was encompassed within the scope of

the Exclusion Order, but the Order simultaneously delegated authority to VA Secretary Douglas Collins to suspend its application—and thus restore labor rights—to subdivisions of the VA where he determined that Chapter 71 could be applied "consistent with national security requirements and considerations." Exec. Order 14251, 90 Fed. Reg. 14553, 14555–56 (Mar. 27, 2025).

5.      On April 11, 2025, Secretary Collins exercised that authority and suspended the application of the Exclusion Order with respect to Plaintiffs, thereby reinstating their members' labor rights and restoring the status quo collective bargaining relationship that had existed for decades. By doing so, the Secretary necessarily determined that Chapter 71 could be applied to Plaintiffs "consistent with national security requirements and considerations." As a result, Plaintiffs and their members retained their labor rights at the VA, where their labor relations with agency management continued to operate within the long-standing Chapter 71 framework.

6.      This came to a halt on November 7, 2025, when Secretary Collins approved an order that, without warning or explanation, rescinded his April 11 order and eliminated Chapter 71 rights for all unions covered by the April 11 order, including Plaintiffs ("Rescission Order").

7.      The Rescission Order became effective upon its publication in the Federal Register on November 13, 2025, and has caused immediate harmful effects for Plaintiffs and their members. Within days of the Rescission Order, the VA notified Plaintiffs that it was terminating its collective bargaining agreements with Plaintiffs. As a result, Plaintiffs and their members at the VA now lack both their statutory labor rights and the negotiated rights enshrined in their collective bargaining agreements ("CBA").

8.      Defendants' actions are unlawful for several reasons. First, Section 2 of Executive Order 14251, which excluded a wide variety of agencies including the VA from federal labor law,

is *ultra vires* because it exceeds the limited authority granted by Congress in Section 7103(b) to exclude agencies from the coverage of Chapter 71. The Order's vast overbreadth and jagged line drawing demonstrate that exclusions were not based on the national security criteria set forth in Section 7103(b). Furthermore, in implementing EO 14251 and the Rescission Order, Defendants have unlawfully abrogated Plaintiffs' collective bargaining agreements without notice or an opportunity to be heard, in violation of the Fifth Amendment of the U.S. Constitution.

9.      Next, separate and apart from the Exclusion Order, the Rescission Order violates the Administrative Procedure Act ("APA"). The Rescission Order is arbitrary and capricious because it fails to provide a reasoned explanation for its abrupt departure from the Secretary's April 11 order, which recognized that there was no impediment to national security by maintaining Chapter 71 rights for Plaintiffs. The Rescission Order cites no facts, events, actions, or changed circumstances to justify this about-face. Nor does the Rescission Order provide any rationale for why national security considerations had suddenly changed with respect to the work performed by Registered Nurses, cemetery caretakers, housekeeping workers, and maintenance workers. Instead, the Secretary simply reversed course without rhyme or reason. Such decision-making is the height of arbitrariness.

10.      The Rescission Order is also contrary to law in violation of the APA. The Secretary's decision to exclude Plaintiffs from Chapter 71 exceeded the authority that was delegated to him by the President, which was solely limited to *restoring* bargaining rights for VA employees. Additionally, Congress provided only a narrow avenue by which agencies could be excluded pursuant to Section 7103: if the agency has a primary function of national security *and* the provisions of Chapter 71 cannot be applied "in a manner consistent with national security requirements and considerations." Plaintiffs' members are employed at hospitals and a cemetery

that serve veterans and their families; that work has no credible connection to national security—as the Secretary himself recognized in April when he restored Plaintiffs' collective bargaining rights.

## JURISDICTION

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

12.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

## VENUE

13.    Venue is proper in this district under 28 U.S.C. § 1391(e) because Plaintiff Laborers' International Union of North America Local Union 1322 resides here and also because a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

14.    Plaintiff United Nurses Association of California/Union of Healthcare Professionals, AFSCME, AFL-CIO ("UNAC/UHCP") is a labor organization headquartered at 13101 Crossroads Parkway S., City of Industry, CA 91746. UNAC/UHCP represents more than 40,000 health care professionals in leading facilities across California and Hawaii, fighting for fair wages, safe staffing levels, and the highest standards of patient care. UNAC/UHCP-represented health care professionals include nurses, Registered Nurses, pharmacists, therapists, acupuncturists, social workers, child life specialists, optometrists, administrative staff within the healthcare system, physical therapists, and many other job classifications.

15.    UNAC/UHCP, through the Pettis Memorial Registered Nurses Association ("PMRNA"), a local union affiliated with UNAC/UHCP, represents a bargaining unit of approximately 820 Registered Nurses ("RNs") within the VA's Loma Linda Healthcare System,

including RNs in Acute Care, Primary Care, and Specialty Care at the Pettis Memorial Veterans Hospital, the Ambulatory Care Center in Redlands, California and nine (9) Community-Based Outpatient Clinics.

16.     Plaintiff Laborers' International Union of North America Local Union 1322 ("LIUNA Local 1322") is a labor organization headquartered at 410 S. Main Street, Providence, RI 02903. It is affiliated with the international union Laborers' International Union of North America ("LIUNA"), and its members are also members of LIUNA. LIUNA Local 1322 represents public and private sector workers throughout Rhode Island. It represents a bargaining unit of more than 100 federal employees at the Providence VA Medical Center who serve veterans and their families as floor nurses and clinic nurses.

17.     Plaintiff Laborers' International Union of North America Local Union 1029 "LIUNA Local 1029" is a labor organization headquartered at 26351 Patriots Way, Georgetown, DE 19947.  It is affiliated with the international union Laborers' International Union of North America ("LIUNA"), and its members are also members of LIUNA. LIUNA Local 1029 represents state and federal public sector workers. It represents a bargaining unit of approximately 600 federal employees at the Wilmington VA Medical Center and at VA community-based outpatient clinics in Dover; DE, Georgetown, DE, Cape May, NJ; Vineland, NJ; and Northfield, NJ. At the VA, LIUNA Local 1029 represents a wide range of job classifications that support veterans and their families, including housekeeping aides, health technicians, nursing assistants, cooks, and maintenance mechanics.

18.     Plaintiff Laborers' International Union of North America Public Employees Local Union 572 ("LIUNA Local 572") is a labor organization headquartered at 5627 Allentown Road, Suite 206, Camp Springs, MD 20746. It is affiliated with the international union Laborers'

International Union of North America ("LIUNA"), and its members are also members of LIUNA. LIUNA Local 572 represents more than 3,000 public sector workers in Washington, D.C., Maryland, Virginia, and North Carolina, including federal employees working at the VA. It represents a bargaining unit of approximately 180 federal employees at the Washington D.C. VA Medical Center ("Washington VAMC"). These employees support veterans and their families in roles such as nutrition and food services, supply chain management, facilities management, and environmental management.

19.    Plaintiff International Brotherhood of Electrical Workers ("IBEW"), Local Union 415 is a labor organization headquartered at 810 Fremont Avenue, Cheyenne, WY 82001. IBEW Local Union 415 represents a bargaining unit of approximately 70 employees at the VA Medical Center in Cheyenne, Wyoming ("Cheyenne VAMC"). The bargaining unit includes all non-supervisory Federal Wage System employees at the Cheyenne VAMC. These employees perform housekeeping and maintenance work at the Cheyenne VAMC.

20.    Plaintiff Wisconsin Federation of Nurses and Health Professionals, Local 5000, AFT, AFL-CIO ("WFNHP") is a labor organization headquartered at 9620 W Greenfield Avenue, West Allis, WI, 53214 that represents healthcare workers in the state of Wisconsin. It is affiliated with the American Federation of Teachers, AFL-CIO ("AFT"). WFNHP represents a bargaining unit of approximately 1,000 RNs employed at the Clement J. Zablocki VA Medical Center in Milwaukee, WI ("Milwaukee VAMC"), a medical center operated by the VA.

21.    Plaintiff International Association of Machinists and Aerospace Workers ("IAM") and Aerospace Workers Local 1998 is a labor organization headquartered at 2428 Rose Street Honolulu, HI 96819.

22.     IAM Local 1998 represents a bargaining unit of approximately 27 employees at the National Memorial Cemetery of the Pacific, part of the VA that is open to the public and is located in Honolulu, Hawaii. At the National Memorial Cemetery of the Pacific, IAM Local 1998 bargaining unit members represent cemetery caretakers and gardeners who maintain the cemetery grounds, prepare and maintain gravesites, and help ensure the cemetery stays orderly and respectful for veterans' families and other visitors.

23.     Plaintiffs bring this action on behalf of themselves as organizations and on behalf of their members, who have lost statutory and contractual protections at work due to the Exclusion Order and/or the Rescission Order.

24.     Defendant United States Department of Veterans Affairs is a federal agency within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551(1), headquartered in Washington, D.C.

25.     Defendant Douglas A. Collins is the Secretary of the VA and is sued in his official capacity. In his official capacity, Secretary Collins issued the Rescission Order.

26.     Defendant Donald J. Trump is the President of the United States. He is sued solely in his official capacity. In that capacity, he issued the Exclusion Order.

## FACTUAL BACKGROUND

I.     **Federal Employees at the VA Have Had the Statutory Right to Join Labor Unions and Collectively Bargain for Decades**

27.     In 1978, Congress enacted the Federal Service Labor-Management Relations Statute ("FSLMRS"), which established a comprehensive framework governing collective bargaining for federal civil service employees. The FSLMRS is contained within Title VII of the Civil Service Reform Act of 1978 ("CSRA") and codified as Chapter 71 of Title 5 of the U.S. Code ("Chapter 71").

28.     In enacting the CSRA, Congress expressly found that "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them . . . safeguards the public interest" and "contributes to the effective conduct of public business," and therefore "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a).

29.     Chapter 71 guarantees employees "the right to form, join, or assist any labor organization, or to refrain from any such activity." 5 U.S.C. § 7102.

30.     Chapter 71 also guarantees employees the right to "engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter." 5 U.S.C. § 7102(2).

31.     Chapter 71 requires agencies to "accord exclusive recognition to a labor organization if the organization has been selected as the representative, in a secret ballot election, by a majority of the employees in an appropriate unit who cast valid ballots in the election." 5 U.S.C. § 7111(a).

32.     Once labor organizations are certified as exclusive representatives, they must act for "all employees in the unit" and are required to represent the interests of all such employees "without discrimination and without regard to labor organization membership." 5 U.S.C. § 7114(a)(1).

33.     As part of Congress's efforts to design a system "to meet the special requirements and needs of the Government," *id.* § 7101(b), Chapter 71 expressly protects enumerated management rights, excluding these topics from the collective bargaining process, *id.* § 7106. For example, these rights protect agency officials' authority "to determine the mission, budget,

organization, number of employees, and internal security practices of the agency," and "in accordance with applicable laws . . . to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees." 5 U.S.C. § 7106.

34.    Chapter 71 also protects the management right to "take whatever actions may be necessary to carry out the agency mission during emergencies." *Id.*

35.    The bargaining framework is further tailored to ensure government flexibility by removing certain employees from its coverage. For example, Chapter 71 excludes "management official[s]"—individuals in positions "the duties and responsibilities of which require or authorize the individual to formulate, determine, or influence the policies of the agency"—from its definition of "employee." *Id.* § 7103 (a)(2), (a)(11). Furthermore, bargaining units may not include "any employee engaged in intelligence, counterintelligence, investigative, or security work which directly affects national security." *Id.* § 7112(b)(6).

36.    Federal employees voluntarily choose to join labor organizations and to pay membership dues to those organizations. 5 U.S.C. § 7115. If an employee within a bargaining unit so chooses and provides a written authorization to do so, agencies are required to deduct membership dues from an employee's pay and transmit those dues to the labor organization. *Id.*

37.    Pursuant to the rights granted by Congress in Chapter 71, federal employees at the VA and other agencies excluded by the Exclusion Order have a long history of joining labor organizations and collectively bargaining with their employers.

38.    For example, Plaintiff UNAC/UHCP, through its affiliate PMRNA, has served as the exclusive representative of all RNs at the Jerry L. Pettis Memorial VA Medical Center, in Loma Linda, California since 1980—just three years after the hospital opened.

39.    Plaintiff Laborers' Local 1322 and its predecessor union has represented employees at the Providence VA Medical Center since at least 2000, when it merged with the local union that was representing those employees before that date.

40.    Plaintiff LIUNA Local 572 and its predecessor union has represented employees at the Washington D.C. VA Medical Center since at least 1982.

41.    Plaintiff LIUNA Local 1029 and its predecessor union has represented employees at the Wilmington VA Medical Center since at least 1967.

42.    Plaintiff WFNHP, including through its former affiliate the Veterans Affairs Staff Nurse Council, Local 5032, WFNHP, AFT, AFL-CIO ("VASNC") has represented RNs at the Milwaukee VAMC since 1980.

43.    Plaintiff IBEW Local Union 415, through its predecessor IBEW Local Union 2168, which was amalgamated into IBEW Local 415 in 1991, has represented workers at the Cheyenne VAMC since the 1960s, well before the CSRA was enacted into law.

44.    Plaintiff IAM Local 1998 has represented employees at the National Memorial Cemetery of the Pacific since before the CSRA was enacted into law, entering into a collective bargaining agreement with the VA in February 1978.

## II.    President Trump Issues Executive Order 14251 Excluding a Wide Range of Federal Agencies from Chapter 71

45.    Congress expressly excluded certain agencies from Chapter 71, including the Federal Bureau of Investigation, the Central Intelligence Agency, and the National Security Agency. 5 U.S.C. § 7103(a)(3).

46.    In addition, Congress authorized the President to exclude other agencies and subdivisions from Chapter 71 in specific, limited circumstances. Exclusions are only permissible when two statutory criteria are met: (1) the agency or subdivision must have "as a primary

function intelligence, counterintelligence, investigative, or national security work"; and (2) the provisions of Chapter 71 "cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1).

47.     Consistent with its limited scope, past presidents have applied Section 7103(b) narrowly to exclude specific agencies and subdivisions devoted to national security matters, such as the Joint Special Operations Command, Exec. Order 12410, 48 Fed. Reg. 13143 (Mar. 28, 1983), or the Naval Special Warfare Development Group, Exec. Order 13039, 62 Fed. Reg. 12529, 12529 (Mar. 14, 1997).

48.     On March 27, 2025, President Trump issued Executive Order 14251, which unlike prior Section 7103(b) orders, broadly excluded a vast array of federal agencies, including for the first time entire Cabinet-level departments, from the coverage of Chapter 71 on purported national security grounds. The President purported to use Section 7103(b) to eliminate labor rights at the VA, where all Plaintiffs represent bargaining unit employees, alongside numerous other agencies such as the Environmental Protection Agency, the Department of the Treasury, and the Bureau of Land Management. EO 14251 § 2.

49.     Although Executive Order 14251 purported to be tailored to those agencies and subdivisions that have as their primary function "intelligence, counterintelligence, investigative, or national security work," the Order expressly exempted subdivisions of the United States Marshals Service, as well as "any agency police officers, security guards, or firefighters" except those working at the Bureau of Prisons. *Id.* EO 14251 also includes further arbitrary distinctions, such as eliminating bargaining rights for workers producing coins at the U.S. Mint but not workers producing paper currency at the Bureau of Engraving and Printing.

50.     The American Federation of Government Employees represents all bargaining unit employees at the Bureau of Prisons and represents employees at the U.S. Mint.

51.     No previous orders issued pursuant to 5 U.S.C. § 7103(b)(1) had eliminated rights for even a single subdivision of the VA. The Exclusion Order, however, excluded the VA in its entirety from Chapter 71. This eliminated labor rights for hundreds of thousands of civilian employees, including Plaintiffs' members working at the VA.

52.     Congress has clearly articulated the "purpose" of the VA: "to administer the laws providing benefits and other services to veterans and the dependents and the beneficiaries of veterans." 38 U.S.C. § 301. Congress has further articulated that the "primary function" of the VA's Veterans Health Administration is "to provide a complete medical and hospital service for the medical care and treatment of veterans." 38 U.S.C. § 7301(b).

53.     In addition to the vast overbreadth of the Order itself, official government documents issued the same day as Executive Order 14251 further demonstrated that the Order was not the product of an application of the national security contained in Section 7103(b). Rather, the purpose of the Order was to punish unions deemed hostile to the administration and pursue other policy goals, such as making it easier to dismantle agencies and fire employees en masse – none of which are permissible grounds for exclusion.

54.     For instance, in the Fact Sheet accompanying EO 14251, the White House specifically referred to so-called "hostile Federal unions" and asserted that "Certain Federal unions have declared war on President Trump's agenda." The White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements* (Mar. 27, 2025), https://www.whitehouse.gov/fact-

sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/ ("Fact Sheet").

55.    The Fact Sheet also expressed disagreement with core provisions of Congress's statutory framework for collective bargaining, claiming that "[a]gencies cannot modify policies in collective bargaining agreements (CBAs) until they expire" and that "[a]gencies cannot make most contractually permissible changes until after finishing 'midterm' union bargaining." *Id.*

56.    The Fact Sheet openly targeted "[t]he largest Federal union" – the American Federation of Government Employees – stating that it "describes itself as 'fighting back' against Trump" and "is widely filing grievances to block Trump policies." It also highlighted that "VA's unions have filed 70 national and local grievances over President Trump's policies since the inauguration—an average of over one a day." *Id.*

57.    The Fact Sheet concluded with a threat, stating "President Trump supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction that jeopardizes his ability to manage agencies with vital national security missions." *Id.*

58.    On the same day the Exclusion Order was issued, Charles Ezell, the Acting Director of the Office of Personnel Management ("OPM"), issued a memorandum to heads and acting heads of departments and agencies titled "Guidance of Executive Order Exclusions from Federal Labor-Management Programs" ("OPM Memorandum").

59.    The OPM Memorandum further showed that Executive Order 14251 was motivated by policy concerns unrelated to the 5 U.S.C. § 7103(b) statutory criteria. It complained that "[a]gency CBAs often create procedural impediments to separating poor performers" and called on agencies covered by the Order to "seek to bring their policies into alignment with the specific Administration priorities below," including limiting Performance Improvement Periods

("PIPs") to 30 days and firing employees "without PIPs in appropriate cases." OPM, *Guidance on Executive Order Exclusions from Federal Labor-Management Programs* 3–4 (Mar. 27, 2025), https://www.opm.gov/chcoc/latest-memos/guidance-on-executive-order-exclusions-from-federal-labor-management-programs.pdf.

60.     Highlighting that the Exclusion Order is intended to make it easier to fire workers en masse, OPM instructed agencies to "[d]isregard [c]ontractual RIF [a]rticles," such that "[a]fter terminating their CBAs," they "should conduct RIFs . . . without regard to provisions in terminated CBAs that go beyond" statutory and regulatory requirements. *Id.* at 5.

## III.    Secretary Collins Suspends the Application of Chapter 71 to Plaintiffs at the VA and Restores Labor Rights for Plaintiffs and their Members There

61.     Executive Order 14251 was not necessarily the end of the line for collective bargaining rights at the VA. Section 4 of the Executive Order authorized the Secretary of the VA to suspend the application of EO 14251 to "any subdivisions of the departments they supervise" if the Secretary determined that Chapter 71 could be applied to those subdivisions "in a manner consistent with national security requirements and considerations." *Id.* § 4. The authority delegated to Secretary Collins was thus limited to restoring Chapter 71 coverage.

62.     Pursuant to Section 4 of the Executive Order, on April 11, 2025, Secretary Collins approved an order suspending the application of EO 14251 for several bargaining units within the VA, including those represented by Plaintiffs. Specifically, the April 11 order suspended the application of EO 14251 "for employees represented by Laborers International Union of North America (LIUNA); Western [sic] Federation of Nurses and Health Professionals (WFNHP), Veterans Affairs Staff Nurse Council (VASNC) Local 5032 at the VA Medical Center Milwaukee, WI; International Association of Fire Fighters (IAFF-99) at the VA Medical Center, Little Rock, AR; United Nurses Association of California/Union of Healthcare Professionals

(UNAC/UHCP) at the VA Medical Center, Loma Linda, CA; Teamsters Union Local 115 at the Department of Veterans Affairs Medical Center, Coatesville, PA; International Brotherhood of Electrical Workers (IBEW) Local 2168 at the Cheyenne WY VA Medical Center; and, International Association of Machinists and Aerospace Workers, (IAMAW) Local 1998 at the VA National Cemetery of the Pacific in Honolulu, HI thereby bringing such employees under the coverage of the Federal Service Labor-Management Relations Statute." *Order Suspending the Application of Section 1-402 or 1-404 of Executive Order 12171*, 90 Fed. Reg. 16427, 16427 (Apr. 17, 2025) ("April 11 Order").

63. The April 11 Order became effective upon its publication on April 17, 2025.

64. A VA spokesperson justified the April 11 Order by explaining that "the unions in the exempted units have posed no or minimal hinderance to VA operations." Erich Wagner, *VA is selectively enforcing Trump's order stripping workers of union rights*, Gov't Exec. (Apr. 18, 2025), https://www.govexec.com/workforce/2025/04/va-selectively-enforcing-trumps-order-stripping-workers-union-rights/404694/.

65. The effect of the April 11 Order was to reinstate the Chapter 71 labor-management framework that had existed at the VA for decades with respect to the Plaintiffs. Defendants continued to recognize Plaintiffs as the exclusive bargaining representative for their respective bargaining units within the VA, honor the contractual obligations contained in Plaintiffs' collective bargaining agreements with the VA, and otherwise abide by the provisions of Chapter 71 with respect to the Plaintiffs.

## IV.    Secretary Collins Abruptly Reverses Course and Rescinds His April 11 Order

66. In the months following the April 11 order, the VA continued to engage with Plaintiffs in accordance with its obligations under Chapter 71 and its collective bargaining

15

agreements with Plaintiffs, as it had for the decades that Plaintiffs have represented workers at the VA. For example, VA management continued meeting with UNAC/UHCP union representatives at the Pettis Memorial VA Medical Center as part of the contractually-required Registered Nurse Association Committee. The VA continued to participate in the contractual grievance process and engaged with Plaintiff WFNHP to settle an unfair labor practice charge. Plaintiffs' members' voluntary dues deductions were processed in accordance with 5 U.S.C. § 7115 and their collective bargaining agreements. Plaintiffs were able to use official time, office space, and could represent their employees when they faced investigatory interviews.

67.    At no point either before or after the April 11 Order did Defendants advise Plaintiffs that complying with the VA's statutory obligations under Chapter 71 interfered with national security requirements or considerations.

68.    Nevertheless, on November 7, 2025, Secretary Collins reversed his position and approved a blanket rescission of his April 11 Order, thereby stripping Plaintiffs and their members of their Chapter 71 rights. *Rescission of Order Suspending the Application of Section 1-402 or 1-404 of Executive Order 12171*, 90 Fed. Reg. 50950 (Nov. 13, 2025) ("Rescission Order"). The sum total of the Secretary's analysis for the Rescission Order was that he had "further considered the delegation of authority provision under Section 4 of E.O. 14251 and the statutory authority under 5 U.S.C. 7103(b)(1)." *Id*. at 50950.

69.    The Rescission Order, which stated it was "effective upon publication," was published in the Federal Register on November 13, 2025. *Id.*

70.    No explanation was given for the Secretary's abrupt departure from his prior decision, which had the effect of eliminating statutory labor law rights that Plaintiffs and their members had enjoyed for decades. The Rescission Order did not cite any factual or evidentiary

support for the Secretary's decision, nor did it identify any events or changed circumstances to explain the change in position.

71.     Moreover, the Rescission Order made no finding that Chapter 71 could no longer be applied consistent with national security requirements and considerations, nor did it contain any explanation as to how such national security considerations had changed since April 11. In fact, Plaintiffs continued to exercise their Chapter 71 rights after April 11 without impact on national security just as they had for decades.

72.     And although the Rescission Order specifically reversed the April 11 Order and eliminated substantial statutory rights, the Secretary failed to give any consideration to the reliance interests of Plaintiffs and their members.

73.     On November 19, 2025, the VA sent a letter to many of Plaintiffs' members informing them that the VA had terminated their collective bargaining agreements, claiming that this "will eliminate barriers and increase focus on the world class care and services Veterans deserve" and informing them that they may "see changes to some of the processes and procedures in your workplace that were previously contained in a collective bargaining agreement."

## V.    Defendants' Actions Have Harmed Plaintiffs and Their Members

74.     The Rescission Order has had immediate harmful effects on Plaintiffs and their members. The Rescission Order eliminates the statutory labor law rights and protections contained in Chapter 71 for Plaintiffs and their members at the VA. As a result, Plaintiffs have lost their ability to perform core services for their members: representing them in negotiations to secure binding collective bargaining agreements and enforcing those obligations through contractual grievance procedures.

75.     Moreover, as a result of the Rescission Order, the VA is refusing to honor its contractual obligations made to Plaintiffs and their members. On November 14, the day after the Rescission Order was published, VA representatives sent letters to Plaintiffs stating, *inter alia*, that their collective bargaining agreements were terminated "effective November 13, 2025."

76.     This resulted in the immediate loss of important substantive and procedural rights governing the working conditions of Plaintiffs' members. As the VA told Plaintiffs' members in its November 19, 2025 letter, the VA no longer follows CBA provisions on "things like promotions, alternative work schedules, details, hours of work, telework, leave usage, etc."

77.     Plaintiffs and their members at the VA have also lost additional benefits of union representation, including the ability to use the grievance and arbitration process to enforce their rights at work. This has eliminated the primary method by which Plaintiffs enforce their members' statutory and contractual rights.

78.     In addition, the majority of Plaintiffs' members at the VA pay their voluntary membership dues through payroll deduction. Following the Rescission Order, the VA has ceased providing payroll deduction of voluntary membership dues, resulting in ongoing lost revenue that Plaintiffs use to further their mission.

79.     Furthermore, the Rescission Order's elimination of collective bargaining and exclusive representation rights for Plaintiffs reduces their bargaining power and reduces the incentive for workers at the VA to join a union, since Plaintiffs are now barred from providing their core services at the VA, including negotiating over terms and conditions of employment and defending employees from arbitrary disciplinary actions by their employer.

80.     Efforts to counteract the harm from the Rescission Order is diverting Plaintiffs' employees and resources away from their core mission of organizing and representing employees, negotiating with employers, and advocating for improved employment conditions.

## Count I

*All Plaintiffs against Defendants VA and Secretary Collins – Violation of the Administrative Procedure Act – Arbitrary and Capricious*

81.     Plaintiffs reallege Paragraphs 1 through 80.

82.     The Rescission Order eliminating Chapter 71 rights for Plaintiffs and their members is final agency action within the meaning of 5 U.S.C. § 704.

83.     The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is found to be arbitrary and capricious. 5 U.S.C. § 706(2)(A).

84.     Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

85.     "An agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Instead, it must give a "reasoned explanation" for such departure and "show that there are good reasons for the new policy." *Id.* at 515–16.

86.     The Rescission Order fails to provide a reasoned explanation for its reversal of the Secretary's April 11 Order suspending the application of EO 14251 as to Plaintiffs. The

19

Rescission Order cites no facts, events, actions, or changed circumstances from April. Instead, the Rescission Order only vaguely states that the Secretary had "further considered" the matter.

87.    The Rescission Order further fails to provide any reasoned explanation for the exclusion of Plaintiffs from Chapter 71 coverage. The Rescission Order provides no facts, rationale, or justification that could support a conclusion that Chapter 71 cannot be applied to Plaintiffs in a manner consistent with national security.

88.    In addition, at no point does the Rescission Order address the reliance interests that Plaintiffs and their members have in their long-standing statutory labor law and collective bargaining rights.

89.    Accordingly, the Rescission Order should be held unlawful and set aside.

## Count II

*All Plaintiffs against Defendants VA and Secretary Collins – Violation of the Administrative Procedure Act – Contrary to Law/Excess of Authority*

90.    Plaintiffs reallege Paragraphs 1 through 80.

91.    The Administrative Procedure Act requires courts to "hold unlawful and set aside agency action" which is found to be "not in accordance with law" and in excess of authority. 5 U.S.C. § 706(2)(A), (C).

92.    The Rescission Order exceeds the Secretary's authority because it is outside the authority that was delegated to the Secretary by the President in the Exclusion Order. In that Order, the President delegated the Secretary the limited authority to *restore* bargaining rights for certain VA employees. Neither the statute nor the Executive Order delegated any authority to the Secretary to *eliminate* Chapter 71 rights for VA employees. In issuing the Rescission Order, which *excludes* Plaintiffs from coverage of Chapter 71 and eliminated their statutory labor law rights, the Secretary engaged in action in excess of statutory authority and contrary to law.

93.     The Rescission Order is also contrary to law because it exceeds the authority that was initially delegated to the President by Congress. An agency subdivision cannot be excluded from the coverage of Chapter 71 unless two statutory criteria are met: (1) the agency subdivision has a primary function of national security; and (2) the provisions of Chapter 71 cannot be applied to that agency subdivision consistent with national security requirements and considerations.

94.     The Rescission Order exceeds the Secretary's statutory authority and is not in accordance with the law because the subdivisions in which Plaintiffs' members are employed do not perform national security work and have no credible connection to national security. The bargaining units excluded from Chapter 71 as a result of the Rescission Order contain employees who are Registered Nurses, housekeepers, maintenance workers, and cemetery caretakers. The VA has maintained collective bargaining relationships with Plaintiffs' bargaining units for decades without any adverse impact on national security, and continued to do so without any impact on national security following the Secretary's April 11 suspension order.

95.     The Secretary's decision to eliminate Chapter 71 rights for Plaintiffs and their members despite no arguable inconsistency with national security considerations is contrary to law, in excess of statutory authority, and thus unlawful under the APA.

96.     Accordingly, the Rescission Order should be held unlawful and set aside.

## Count III

*Plaintiffs LIUNA Local 1322, LIUNA Local 1029, LIUNA Local 572, and IBEW Local 415 against All Defendants – Ultra Vires* (Violation of Chapter 71 of Title 5)

97.     Plaintiffs LIUNA Local 1322, LIUNA Local 1029, LIUNA Local 572, and IBEW Local 415 reallege Paragraphs 1 through 80.

98.     Pursuant to 5 U.S.C. § 7103(b)(1), agencies or subdivisions thereof may only be excluded from Chapter 71 if (1) "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work," and (2) "the provisions of [Chapter 71] cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations."

99.     The Order's vast overbreadth and Defendants' own statements demonstrate that no actual determination was made that each excluded agency or subcomponent has as its primary function "intelligence, counterintelligence, investigative, or national security work."

100.     Furthermore, the fact that civilian employees have served their country for decades at the agencies covered by the Exclusion Order while maintaining collective bargaining rights belies the claim that Chapter 71 cannot be applied "in a manner consistent with national security requirements and considerations."

101.     The Executive Order thus far exceeds the limited authority granted by Congress to exclude agencies and subdivisions from Chapter 71 and instead eliminates federal labor law protections for the vast majority of federal workers, destroying Congress's carefully articulated scheme for federal labor-management relations and collective bargaining.

102.     That national security is but a pretext is confirmed by the White House's own Fact Sheet accompanying Executive Order 14251, which acknowledged that union rights were eliminated to strike a blow at "hostile Federal unions" and attacked unions the President believed had "declared war on [his] agenda" and were not "work[ing] with him."

103.     The pretextual nature of the Executive Order is also made clear by contemporaneous guidance issued by OPM, which showed that union rights were eliminated to achieve unrelated policy goals like mass agency firings and easier terminations of civil servants.

104.    Because Section 2 of Executive Order 14251 is contrary to Chapter 71 of Title 5, including 5 U.S.C. § 7103(b)(1), it is ultra vires and void.

## Count IV

*Plaintiffs LIUNA Local 1322, LIUNA Local 1029, LIUNA Local 572, IBEW Local 415 against All Defendants – Violation of the Fifth Amendment (Procedural Due Process)*

105.    Plaintiffs reallege Paragraphs 1 through 80.

106.    The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

107.    "Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment." *Lynch v. United States*, 292 U.S. 571, 579 (1934).

108.    Chapter 71 makes clear that federal collective bargaining agreements are binding on all parties. See 5 U.S.C. §§ 7114, 7116.

109.    The termination of Plaintiffs' CBAs pursuant to Executive Order 14251 and the Rescission Order has deprived Plaintiffs and their members of constitutionally protected property interests.

110.    Plaintiffs were given no notice or opportunity to be heard before their CBAs were terminated, in violation of the Fifth Amendment's guarantee of procedural due process. As such, these terminations should be enjoined.

## Count V

*Plaintiffs LIUNA Local 1322, LIUNA Local 1029, LIUNA Local 572, IBEW Local 415 against All Defendants – Violation of the Fifth Amendment (Abrogation of Property Rights in Federal Contract)*

111.    Plaintiffs reallege Paragraphs 1 through 80.

112.    "The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen." *Lynch*, 292 U.S. at 580 (quoting *The Sinking Fund Cases*, 99 U.S. 700, 719 (1878)).

113.    Because Congress authorized federal agencies to form binding contracts that created protected property interests, "the due process clause prohibits the United States from annulling them, unless, indeed, the action taken falls within the federal police power or some other paramount power." *Id*. at 579.

114.    The termination of Plaintiffs' CBAs pursuant to Executive Order 14251 and the Rescission Order have abrogated their contracts with the federal government and associated property interests, in violation of the Fifth Amendment. As such, these terminations should be enjoined.

## Relief Requested

**WHEREFORE**, Plaintiffs pray that this Honorable Court enter an ORDER:

A.    Declaring that the Rescission Order violates the Administrative Procedure Act and therefore is null and void;

B.    Enjoining the Defendants from implementing or otherwise giving effect to the Rescission Order;

C.    Staying, postponing, or preliminarily setting aside the Rescission Order pursuant to 5 U.S.C. § 705, and permanently doing the same pursuant to 5 U.S.C. § 706;

D.  Enjoining the Defendants from implementing or otherwise giving effect to

Section 2 of Executive Order 14251;

E.  Awarding Plaintiffs their attorney's fees and costs; and

F.  Granting such other relief as this Court may deem just and proper.


Date: December 17, 2025                          Respectfully submitted,

                                                 */s/ Elizabeth Wiens*

Abigail V. Carter*                               Elizabeth Wiens, Esq. (#6827)
Ramya Ravindran*                                 **Gursky Wiens & Shanley, Attorneys at Law**
Lane Shadgett*                                   20 Centerville Road
J. Alexander Rowell*                             Warwick, RI 02886
**Bredhoff & Kaiser, PLLC**                      Tele: (401) 294-4700
805 15th Street NW, Suite 1000                   Fax: (401) 294-4702
Washington, D.C. 20005                           Ewiens@rilaborlaw.com
Tele: (202) 842-2600
Fax: (202) 842-1888
acarter@bredhoff.com
rravindran@bredhoff.com
lshadgett@bredhoff.com
arowell@bredhoff.com


*Attorneys for Plaintiffs*
*\*Pro Hac Vice Motion Forthcoming*