# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED NURSES ASSOCIATION OF CALIFORNIA/UNION OF HEALTHCARE PROFESSIONALS; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 1322; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 1029; LABORERS' INTERNATIONAL UNION OF NORTH AMERICA LOCAL 572; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 415; WISCONSIN FEDERATION OF NURSES AND HEALTH PROFESSIONALS, LOCAL 500, AFT, AFL-CIO; and INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS LOCAL 1998,<br>        Plaintiffs,<br><br>        v.<br><br>U.S. DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS A. COLLINS, in his official capacity as Secretary of the U.S. Department of Veterans Affairs; and DONALD J. TRUMP, in his official capacity as President of the United States,<br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 25-cv-674-MRD-PAS |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Seven unions commenced this cause of action to challenge the termination of

their collective bargaining agreements ("CBAs") with the Department of Veterans

Affairs ("VA").  The Plaintiffs represent approximately 2,800 VA employees.  ECF No. 10-1 at 8.  As recounted in greater detail in this Court's Memorandum & Order issued March 13, 2026 addressing a separate challenge by different union plaintiffs to related executive action, *see Am. Fed'n of Gov't Emps. Local 2305 v. United States Dep't of Veterans Affs.*, No. 25-CV-583-MRD-PAS, 2026 WL 709856, at *1–2 (D.R.I. Mar. 13, 2026) ("*AFGE*"), President Trump signed an executive order on March 27, 2025, excluding the VA and other federal agencies from the previously statutorily protected right to collective bargaining.  Assuming the reader's familiarity with the details recounted in *AFGE*, the Court will only set the table for this Memorandum & Order with the basic, necessary items to provide some broad context.

In March 2025, President Trump exercised the authority granted to him in 5 U.S.C. § 7103(b)(1) of the Federal Service Labor-Management Relations Statute ("FSLMRS") and issued Executive Order 14,251 (the "EO").  Guzynski Decl. Ex. 2, ECF No. 10-2 at 130–134.  A couple of weeks later, Secretary Collins exercised the authority granted to him in Section 4 of the EO and suspended the application of the EO to several unions, including the Plaintiffs in this case (the "Suspension Order").  Guzynski Decl. Ex. 6, ECF No. 10-2 at 157.  With the Suspension Order in place, the Plaintiffs' relationship with the VA did not change and Plaintiffs' members continued to enjoy all the benefits of their union membership.  Mem. in Support of Mot. for Preliminary Inj., ECF No. 10-1 at 16.  On November 13, 2025, however, after "[h]aving further considered the delegation of authority provision under Section 4 of the [EO] and the statutory authority under 5 U.S.C. § 7103(b)(1)," Secretary Collins

2

rescinded the Suspension Order (the "Rescission Order").  *Id.* at 17; Guzynski Decl. Ex. 7, ECF No. 10-2 at 159.  The VA subsequently notified each Plaintiff that, moving forward, none would be recognized as an exclusive representative at the VA and the CBAs and other agreements they had in place with the VA were terminated.  ECF No. 10-1 at 18; *see, e.g.,* Suster Decl. Ex. 2, ECF No. 10-3 at 59.[1]  The VA employees who lost their collectively bargained labor rights include nurses at VA medical centers, housekeeping, kitchen, and facility maintenance staff.  ECF No. 10-1 at 17. The Defendants told the employees previously covered by a Plaintiff union that the VA managers would follow VA policies for all employment matters.  *Id.* at 18; Pilchard Decl. ¶ 24 & Ex. 5, ECF No. 10-7.

This cause of action challenges the Rescission Order as arbitrary and capricious as well as contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A, C).[2]  Complaint, ECF No. 1 at 20–22.  Before the Court is the Plaintiffs' Motion for Preliminary Injunction, requesting that the Rescission Order be stayed or preliminarily set aside on the basis of these two claims.  ECF No. 10 at 2.

---

[1] Each plaintiff provided a copy of the termination letter from the VA; each letter is identical in content.  *See* ECF Nos. 10-3 Ex. 2; 10-4 Ex. 3; 10-5 Ex. 3; 10-6 Ex. 3; 10-7 Ex. 2; 10-8 Ex. 2.

[2] A subset of the Plaintiffs also claim that all the Defendants' actions were ultra vires and in violation of their Procedural Due Process and federal contract property rights under the Fifth Amendment.  Complaint, ECF No. 1 at 22–24.  Those claims are not at issue for the purposes of ruling on the motion pending before the Court.

## I.    LEGAL STANDARD

To prevail on their motion for preliminary injunction, the Plaintiffs "must establish" that they are: (1) "likely to succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Doe v. Trump*, 157 F.4th 36, 46 (1st Cir. 2025) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the Government is the opposing party, factors three and four are considered together. *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021).

## II.    DISCUSSION

### A.    Preliminary Issues

The Defendants contend that there are two reasons why the Court should not adjudicate this pending motion. Before the Court addresses the preliminary injunction factors, it explains why it is not persuaded by either reason.

#### 1.  Staying the case

The Defendants kick off their opposition to the motion for preliminary injunction by asking this Court to stay this litigation until the appellate challenges to the constitutionality of the EO in the Ninth and D.C. Circuits are resolved. Opp'n to Mot. for Preliminary Inj., ECF No. 13 at 27. The D.C. Circuit Court has heard appeals from the D.C. District Court's two grants of motions for preliminary injunction in favor of union plaintiffs; each case challenged the EO as an ultra vires act on the part of President Trump. *See* D.C. Cir. Case Nos. 25-5157, 25-5184. An opinion on the merits of those appeals is forthcoming. After the Defendants here filed

4

their opposition to this motion, the Ninth Circuit issued an opinion vacating the preliminary injunction the Northern California District Court had entered in favor of union plaintiffs on their claim that the EO was an act of retaliation against them in violation of the First Amendment. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 167 F.4th 1247, 1252 (9th Cir. 2026). The Defendants contend that a stay is appropriate because the resolution of those cases on appeal would narrow the issues here by resolving the Plaintiffs' challenge to the EO. *Id.* The Plaintiffs are not on board with this idea, asserting that they will suffer prejudice from a stay as they continue to endure irreparable harm if the Rescission Order is left in place while the other cases are litigated. Reply, ECF No. 15 at 29, 32.

The longstanding rule governing whether one cause of action will be stayed pending the resolution of another case emphasizes the broad discretion a district court has to weigh the competing interests at play. *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (citing *Landis v. North American Co.*, 299 U.S. 248 (1936)). "[T]here is a heavy burden on the party requesting a stay to justify requiring 'a litigant in one cause . . . to stand aside while a litigant in another settles the rule of law that will define the rights of both,'" while also recognizing an efficiency in suspending one case when the resolution of another, "even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending case and assist in the determination of the questions of law involved." *Id.* (quoting *Landis*, 299 U.S. at 253–54, 255).

5

This Court acknowledges that some of the Plaintiffs' claims in this case challenge the EO directly. One of these claims, for example, challenges the EO as an ultra vires act, just like the cases under way in D.C. But unlike the D.C. cases, the pending motion for preliminary injunction here is focused only on the Rescission Order and therefore a stay prior to the adjudication of this motion is neither necessary nor just. Because the Plaintiffs would be unfairly prejudiced by a stay at this juncture, the Defendants' request for a stay is denied, but without prejudice.

### 2. Claim channeling

The Defendants assert their oft-repeated defense that the district court lacks subject matter jurisdiction to hear Plaintiffs' claims because the FSLMRS requires these claims to be raised to the Federal Labor Relations Authority ("FLRA") rather than filed in a federal district court. ECF No. 13 at 31–38. This Court recently explained in detail why it disagrees with this defense, *see AFGE*, 2026 WL 709856, *2–4, and incorporates its reasoning from the March 13 Memorandum & Order in full here because it has been given no reason to retread this ground. The Defendants do not posit any alternative reason why channeling is required here. They, in fact, admit in their brief in opposition that the Rescission Order excludes Plaintiffs' members from FSLMRS coverage. ECF No. 13 at 19. The bottom line is that the Court is not persuaded that it must cede jurisdiction over the Plaintiffs' claims to the FLRA.

### B.    Likelihood of Success on the Merits

#### 1. APA Arbitrary and Capricious[3]

Agency action is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) if it is not reasonable and reasonably explained. *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024). The federal courts' "well-worn arbitrary-and-capricious standard ensures that an administrative agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 567 (2025) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). When asked to review agency action, the courts must defer to the agency's decision and "may not substitute its own policy judgment for that of the agency." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). When an agency changes its position on a given policy, it must "provide a reasoned explanation for the change," show some "awareness" that their action represents a change in "position," and "consider 'serious reliance interests.'" *Wages & White Lion Invs., L.L.C.*, 604 U.S. at 568 (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–222 (2016)). That said, the Supreme Court has also been clear that an agency does not need to prove that the new reasons are better than the reasons for the prior policy unless the "new

---

[3] The Defendants do not oppose this motion on the basis that the Rescission Order is not a final agency action subject to judicial review under the APA, 5 U.S.C. § 704. *See generally*, ECF No. 13. The Court agrees with the Plaintiffs' reasoning about how the Rescission Order qualifies as a final agency action. *See* ECF No. 10-1 at 21–22.

policy rests upon factual findings that contradict those which underlay its prior policy[,] or when its prior policy has engendered serious reliance interests that must be taken into account." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). In those cases, "a reasoned explanation is needed for disregarding facts and circumstances" that were at the root of "the prior policy." *Id.* at 516.

The Supreme Court and First Circuit have also clearly explained that "[j]udicial review of agency action is limited to the grounds that the agency invoked when it took the action." *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 34 (1st Cir. 2026) (order of court) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (citation modified)). "It is a bedrock principle of administrative law that a court reviewing agency action may consider only the agency's explanation given at the time the relevant decision was made, as opposed to its post hoc rationale." *Melone v. Coit*, 100 F.4th 21, 31 (1st Cir. 2024) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943)).

The Plaintiffs argue that the Defendants' failure to provide any explanation for the Rescission Order beyond having "further considered the delegation of authority provision in section 4 of [the EO] and the statutory authority under [§ 7103(b)(1)]" falls far short of the expectation that an agency provide a reasoned explanation for changing its mind about these unions' CBAs. ECF No. 10-1 at 23–25. The Defendants counter that their explanation (quoted in its entirety above) was sufficient under the case law for the Court to conclude that they met their obligations under the APA. ECF No. 13 at 41–42. In reply, the Plaintiffs emphasize that to allow

8

the Defendants' vague explanation here to count as a reasoned or reasonable explanation or to meet the requirements for a change to a previously announced policy would be to obliterate any justification requirement pursuant to the APA.  ECF No. 15 at 18.

The vague phrase "having further considered" the law governing the authority to take an action or make a decision does not come close to being a "reasoned explanation."  The Court notes that the Defendants have not provided this Court with any contemporaneously published or articulated statements made at the time of the Rescission Order that specifically highlight or explain that national security concerns were the impetus for the termination decision.  In the sole declaration filed in support of their response in opposition to the motion, the Defendants list several ways in which terminating the CBAs removed existing "obstacles" to "the VA's ability to address employees with national security-related duties who, nevertheless, demonstrate performance or conduct issues" and therefore resolved the negative impact of the CBAs on the VA's national security work.  Therit Decl. ¶ 16, ECF No. 13-1 at 9.  To the extent that this list can be viewed as an explanation for how or why Chapter 71 could no longer be applied to the unions "in a manner consistent with national security requirements and considerations," § 7103(b)(1), the case law is clear that post-hoc rationalizations are insufficient to justify an agency's reversal in course or new action, *see Melone*, 100 F.4th at 31.  Furthermore, the Defendants have not provided any exhibits to support the paragraph in the declaration stating the Defendants made a final decision to issue the Rescission Order after weeks of

planning and consideration. *See* Therit Decl. ¶ 5. Instead, as the Plaintiffs point out, the Court is left with the fact that the Plaintiffs' CBAs were left intact for almost eight months after President Trump authorized the VA to terminate CBAs governing its employees. *See* ECF No. 10-1 at 17. With no attempt to explain the changed decision about exempting some unions from the reach of the EO other than a variation of "we changed our mind," the Court is compelled to conclude that, on the record before it, the Plaintiffs have shown a likelihood of success on the merits of its claim that the Rescission Order was an arbitrary and capricious action. *See Wages & White Lion Invs., L.L.C.*, 604 U.S. at 568.[4]

## C.    Irreparable Harm

In this second factor of the preliminary injunction calculus, the Court considers whether the Plaintiffs have shown that "they are '*likely* to suffer irreparable harm in the absence of preliminary relief.'" *Trump*, 157 F.4th at 80 (quoting *Winter*, 555 U.S. at 20). "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).

---

[4] The Plaintiffs also argue that the Rescission Order is contrary to law (and therefore in violation of APA § 706(2)(A) & (C)) because (1) Secretary Collins' actions were beyond the authority delegable by the President pursuant to § 7103(b) and (2) the Rescission Order strayed beyond the strict parameters defined in § 7103(b) as allowed for excluding agency employees from Chapter 71 coverage. ECF No. 10-1 at 25–30. Because the Court concludes that the Plaintiffs have shown a likelihood of success on the merits of their arbitrary-and-capricious APA-based claim, the Court need not reach this claim at this time.

The Plaintiffs provide several examples of irreparable harm to their organizations and to their members and contend that the loss of rights and protections encompassed in the CBAs cannot be remedied later. ECF No. 10-1 at 32–35. Some of these rights include union representation at investigatory interviews and employee disciplinary proceedings, *see, e.g.*, Pilchard Decl. ¶ 23, ECF No. 10-7; Keegan Decl. ¶¶ 25–26, ECF No. 10-4, working hours and leave time, *see, e.g.*, Keegan Decl. ¶¶ 10, 11, 29, ECF No. 10-4, and safety measures, *see, e.g.*, Guzynski Decl. ¶ 12, ECF No. 10-2. ECF No. 10-1 at 33–34. The Plaintiffs contend that all of these previously enforceable rights are now stripped away, with the VA quickly changing the working conditions and procedures for challenging them. ECF No. 15 at 24. The Plaintiffs also argue that they are suffering irreparable harm because the termination of the CBAs means that they are unable to perform their core functions such as organizing additional employees thereby eliminating a reason why members join and sustain their membership. ECF No. 10-1 at 34–35.

The Defendants retort that the Plaintiffs' arguments on this factor are not compelling. ECF No. 13 at 48. They argue that (1) the loss of collective bargaining rights can be resolved later through remedial relief, (2) collection of dues is possible without the automatic payroll deduction previously in place for VA employees, and (3) loss of members is speculative at this point. *Id.* at 49-50.

As the Court reasoned in *AFGE*, there are myriad benefits from the CBAs that cannot be remedied retroactively. 2026 WL 709856, at *10. The Plaintiffs in this case have well-supported their arguments that the VA has already been stripping the

11

benefits and protections encompassed in the CBAs. The changes to the disciplinary processes and working conditions have immediate and irreparable harm to Plaintiffs and their members, and the continued changes are likely to continue exacerbating the harms in the absence of relief. *See Trump*, 157 F.4th at 80. The Court concludes that the Plaintiffs have satisfied their burden on this factor.

### D.    Balance of the Equities/Public Interest

The combined consideration of balancing the equities and the public interest requires the Court to weigh "the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)), "pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction," *id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). The Plaintiffs argue that these two factors also weigh in their favor because, without the CBAs in place, the Defendants enjoy the benefit of not having additional protections and benefits with which to conform while the Plaintiffs suffer immediate and demonstrable harm. ECF No. 10-1 at 35–36. There is no indication, they continue, from the Defendants that allowing the Plaintiffs' CBAs to remain in place from April through November of 2025 caused any harm to the country's national security. *Id.* at 35–36. The Defendants, relying on the EO and the Rescission Order, assert that an injunction granted here would put the Plaintiffs back within FSLMRS coverage despite Secretary Collins' conclusion that this would not be in the country's national security interest. ECF No. 13 at 50. The Court notes that

12

although the EO did explain the basis for the change in policy, Secretary Collins—either in the Rescission Order or a statement issued around the same time—did not. "Having further considered the delegation of authority . . . and statutory authority" cannot be interpreted to mean that leaving the Plaintiffs' CBAs in place is to the detriment of the country's national security.  Guzynski Decl. Ex. 7, ECF No. 10-2 at 159.

The Court agrees with the Defendants that "the public has an interest in ensuring that agencies with a primary national security function . . . operate effectively and without delay to protect the American people."  ECF No. 13 at 51.  But the Defendants have provided the Court with nothing to support their contention that the Rescission Order is the result of any consideration and reasoned conclusions regarding the effect of these Plaintiffs' CBAs on national security interests. Moreover, as this Court has quoted before, "the Court is mindful that the First Circuit has been clear that 'there is generally no public interest in the perpetuation of unlawful agency action.'" *AFGE*, 2026 WL 709856, at *11 (quoting *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025)).  The balance of the equities and the public's interest do not weigh against issuing the relief requested here.

       \* \* \*

Overall, the Court concludes the Plaintiffs have adequately established that all the preliminary injunction factors weigh in their favor and will grant the preliminary injunctive relief requested.

### E.    Bond

The Defendants assert that the Plaintiffs must be required to give some security in case it is later determined that the injunction was not warranted.  ECF No. 13 at 54.  The Plaintiffs respond that whether to order the payment of any bond is within the Court's broad discretion.  ECF No. 15 at 27–28.  As the parties know well, Rule 65(c)'s instruction that a district court must require the moving party to post some amount of security is accompanied by the actual substantial discretion recognized by the court of appeals.  Fed. R. Civ. P. 65(c); *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991).  And the district courts within this Circuit have established a practice "[i]n the face of litigation challenging the current presidential administration's policies and implementation thereof . . . to either require[] a nominal bond or waive[] bond in its entirety."  *AFGE*, 2026 WL 709856, at *11 (citing cases).  The Court therefore ORDERS the Plaintiffs to post a nominal bond in the amount of $1,000.

## III.    ORDER

The Plaintiffs' Motion for Preliminary Injunction (ECF No. 10) is GRANTED. The November 11, 2025 Rescission Order is preliminarily set aside for the Plaintiffs. The Defendants shall immediately reinstate the Plaintiffs' CBAs and shall be governed by the terms of each of these CBAs.  The Defendants shall also immediately notify the relevant bargaining units of this Order, shall continue or reinstate processing of pending grievances and arbitrations submitted pursuant to the CBAs, and shall accept new grievances filed pursuant to the CBAs.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge


03/27/2026